**FRANK LYON COMPANY and Frank Lyon Company of Midwest, Inc., Plaintiffs,**

v.

**MAYTAG CORP. and Jenn–Air Company, a Division of Maytag Corp., Defendants.**

No. LR–C–87–935.

United States District Court, E.D. Arkansas, W.D.

July 11, 1989.

Glenn E. Kelley, Gill Law Firm, Little Rock, Ark., for plaintiffs.

Vince Foster, Jr., Hillary Rodham Clinton and Carol Arnold, Rose Law Firm, Little Rock, Ark., and James Williams, Bailey & Williams, Dallas, Tex., for defendants.

## ORDER

ROY, District Judge.

On November 10, 1988 the Court entered an Order stating that Indiana law would apply to this case. The Court also allowed the parties to supplement their briefs on the remaining state law claims. After initially reviewing the briefs, the Court thought it might be helpful to hear the attorneys on the issues raised. However, the only hearing date upon which all of the attorneys could agree is August 28, 1989. Because of the age of the case, the Court felt it necessary to resolve this matter immediately, rather than wait two more months. The Court has again reviewed the briefs and applicable law, and determined that a hearing would not be of any substantial benefit. The Court therefore finds as follows.

Beginning in 1982 and through January 13, 1987, Jenn–Air and each plaintiff entered into Distributor Sales Agreements by which plaintiffs were to distribute Jenn–Air products in a defined territory. Pursuant to paragraph 19 of the Agreements, Jenn–Air gave plaintiffs written notice of termination by letter dated August 21, 1987.

In the supplemental brief, plaintiffs assert that they are relying on breach of contract claims: (1) breach of contract by cancellation in mid-term without cause, and (2) breach of implied duty of good faith and fair dealing. Plaintiffs contend that this implied duty of good faith is supplied both by Indiana common law and by the Indiana UCC. Plaintiff also contends that either the common law or the UCC duty of good faith supplements the silence of the contract concerning whether it may be cancelled in mid-term without cause or only with cause.

Paragraph 19 of the Agreements provided that the Agreements "may be terminated at any time" by either party after sixty (60) days notice. Paragraph 23 provides that the agreement "can be declared terminated by Company if there is a change in operating management prior to written notice to Company and its written approval of such change." Paragraph 27 provides that except "as otherwise provided by applicable State, Provincial, or Federal law therefore shall remain effective until March 31, 1988 unless previously terminated by cancellation as provided in Paragraph 19 hereof."

As a general proposition, Indiana courts have espoused a "general reluctance to alter the terms of an express contract". *Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1209 (7th Cir.1985). Each Agreement is "to be interpreted to mean what on its face it purports to mean, unless from the entire contract and the subject matter thereof, it is clear that some other meaning was intended." *Williams v. National Can Corp.*, 603 F.Supp. 1268, 1275 (N.D.Ind.1985). In its previous Order, the Court found that nothing had been presented to indicate that the agreements were adhesion contracts. The Court further found that it was apparent that plaintiffs' counsel and plaintiffs had the opportunity to discuss the agreements and the ramifications of the provisions contained therein.

Plaintiffs are asking the Court to imply an understanding that the Agreements could be terminated only for good cause since the Agreements do not expressly state that the termination may occur without cause.

Indiana courts have construed provisions similar to Paragraph 19 as allowing termination without cause. In *Warrick Bever-*

age Corp. v. Miller Brewing Co., 170 Ind. App. 114, 352 N.E.2d 496, 498 (1976), a written distributorship agreement provided that either party could "terminate this relationship at any time". The court held such language to mean that "either Warrick or Miller could have terminated the duties of performance at will without cause" and that the agreement "was unenforceable as respects their future performance". *Id.*, 352 N.E.2d at 500. In *Rockwell Engineering Co., Inc. v. Automatic Timing and Controls Co.*, 559 F.2d 460, 461 (7th Cir. 1977), the district court similarly construed a written agreement providing for termination "by either party upon 30 days' written notice". The Seventh Circuit affirmed the summary judgment granted in favor of the defendant, Automatic, opining that "under Indiana law Automatic was entitled to terminate its relationship with plaintiff arbitrarily". *Id.*, 559 F.2d at 463.

In *Monroe County Oil Company Inc. v. Amoco Oil Co.*, 75 B.R. 158, 163 (S.D.Ind. 1987) the Court stated that "Monroe is not entitled to relief for breach of an implied covenant of good faith and fair dealing since Indiana law does not recognize such an implied covenant." Implied covenants are not favored and "Indiana takes an even stronger position against implied covenants where they 'restrict another party's freedom to enter contracts or engage in other legitimate business.'" *Prudential Insurance Company of America v. Diemer*, 637 F.Supp. 313, 316 (N.D.Ind.1986), *aff'd.*, 810 F.2d 1167 (7th Cir.1987) (citation omitted), quoting *Keystone Square v. Marsh Supermarkets, Inc.*, 459 N.E.2d 420, 423 (Ind. App.1984).

Much insight in this area of the law can be gleaned from a law review article entitled: *Termination of Franchises: Application of the Implied Covenant of Good Faith and Fair Dealing*, 7 Franchise Law Journal 1 (Summer 1987). The authors discuss the various approaches taken by the courts when confronted with different fact situations. They state:

Where the parties to a contract specifically provide for termination of the contract without cause or for any reason, invoking the implied covenant of good faith to require good cause for termination would conflict with, rather than fulfill, the parties' reasonable expectations under that contract.

*Id.* at 17.

The authors concluded:

In situations in which the contract between the parties is *silent* or objectively *unclear* as to the circumstances in which termination is proper, some courts may invoke the implied covenant of good faith to supply missing terms consistent with the parties' reasonable expectations. Such expectations may include a good cause requirement where, for example, one party's performance requires long-term efforts and substantial monetary expenditures before that party could realize the fruits of the contract.

*A different case is presented when the contract allows termination on notice. Such provisions have classically been interpreted to allow termination without cause.* The reasonable expectation of the parties to an on notice termination provision therefore appears to be that either party is entitled to end the relationship, for reasons sufficient to itself, without being required to show cause.

*Id.* at 19 (emphasis added).

In the present case, there is clearly a "notice" provision, and it is consistent with the holding in many cases to construe such an agreement as authorizing termination without cause. *See Premier Wine & Spirits v. E. & J. Gallo Winery*, 644 F.Supp. 1431 (E.D.Cal.1986), *aff'd.* 846 F.2d 537 (9th Cir.1988), (a good cause requirement cannot arise under the covenant of good faith and fair dealing when such a requirement would be inconsistent with the express terms of the Distributorship Agreement).

Furthermore, the U.C.C. good faith provision may not be used to override explicit contractual terms. *Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 679 (2d Cir.1985); *Blalock Machinery and Equipment Co. v. Iowa Manufacturing Co.*, 576 F.Supp. 774, 777 (N.D.Ga.1983). In *Grand Light, supra*, the Court also

cited two cases which discussed the bargaining position of the parties. In *Triangle Mining Company, Inc. v. Stauffer Chemical Co.*, 753 F.2d 734, 740 (9th Cir. 1985), the Court found that absent special reliance or unequal bargaining power, the clear termination provision rendered the motive behind termination irrelevant. And in *Cardinal Stone Company, Inc. v. Rival Manufacturing Co.*, 669 F.2d 395, 396 (6th Cir.1982) the court found that the contract was negotiated by experienced businessmen and refused to apply the U.C.C. good faith requirement to override the express term provision. In *Grand Light, supra,* the contract expressly provided for termination on 30 days' notice, and the Court found that no good faith requirement should be implied to override the contractual provisions.

The Court finds the same logic should apply in this case. The parties were not in unequal bargaining positions. They were experienced businessmen who had sufficient opportunity to consult with counsel and make modifications. Furthermore, the termination clause is not unreasonably favorable to the defendant. The Clause gives *either* party the power to unilaterally terminate the contract upon 60 days' notice.

Based upon the foregoing, the Court finds that under Indiana law, the defendant was entitled to terminate the Agreements without cause upon 60 days' notice, that proper notice was given, and the good faith obligation of the Code does not override the express terms of the Agreements. Accordingly, the termination is effective and the defendants' Motion for Summary Judgment is granted.

ORDERED.